## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Harold R. Berk, | : | |
| Plaintiff, | : | CIVIL ACTION NO.  **22 - 1 5 0 6** |
| | : | |
| vs. | : | |
| | : | |
| Wilson C. Choy, M.D., | : | |
| Beebe Medical Center, Inc., and | : | JURY TRIAL DEMANDED |
| Encompass Health Rehabilitation | : | |
| Hospital of Middletown, LLC, | : | |
| Defendants | | |

### COMPLAINT

1. Plaintiff Harold R. Berk is a resident and citizen of the State of Florida who resides at 17000 SW Ambrose Way, Port St. Lucie, Florida 34986. He also owns, together with his wife, real property at 207 Samantha Drive, Lewes, Delaware 19958. Plaintiff was an attorney for 51 years and retired as of July 1, 2022.

2. Defendant Wilson C. Choy, M.D. is a licensed physician in and a citizen of the State of Delaware, who maintains offices at 8 N. Race Street, Georgetown, Delaware 19947.

3. Defendant Beebe Medical Center, Inc., is a Delaware corporation with offices, and facilities located at 424 Savannah Road, Lewes, Delaware 19958, and it employs physicians, nurses and technical staff and consulting physicians who provide medical care and treatment, and it is a licensed medical provider facility in Delaware.

4. Defendant Encompass Health Rehabilitation Hospital of Middletown, LLC, is a Delaware corporation which maintains and operates rehabilitation hospital facilities located at 250

Hampden Road, Middletown, Delaware 19709 and it is a licensed rehabilitation hospital in Delaware.

5.   This is an action for damages against each of the defendants for medical malpractice and negligence by causing additional injury to plaintiff beyond the ankle injury presented on Beebe Hospital admission and failing to properly examine, test, diagnose and treat the fractures of plaintiff's left leg and failing to follow ordered limitations on weight bearing.

6.   This Court has jurisdiction over this matter under 28 U.S.C. §1332 as the matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff gave defendants notice of his claims by letter dated January 15, 2021, and he further gave them notice, by a letter dated August 11, 2022, and sent by certified mail, of his intent to further investigate under 18 Del. Code §6856 (4) which provides a ninety-day extension of the two-year Statute of Limitations.  Copy of the letter attached as Exhibit 1.

7.   Venue is proper in this Court as each of the defendants maintains offices and their principal place of business in Delaware.

FACTS

8.   On August 20, 2020, plaintiff fell out of bed and severely injured his left ankle and foot. He was taken by fire ambulance to the emergency room at defendant Beebe Hospital owned and operated by defendant Beebe Medical Center, Inc. ("Beebe").

9.   Plaintiff was taken to the emergency department where his injury was examined by doctors, nurses and other personnel employed by defendant Beebe, and X-rays were taken of his left ankle and foot.

10. A radiologist employed by defendant Beebe, Kimberly Gardner, M.D., examined the films from the Xrays, and in her report she stated her findings:

2

There is a mildly displaced fracture of the distal tibia involving the medial malleolus and posterior cortex. There is a mildly comminuted nondisplaced fracture of the distal fibula centered approximately 6 cm above the tibial plafond. There is mild widening at the ankle mortise, concerning for underlying ligamentous injury. The talar dome is smooth. Bone mineralization is within normal limits. No radiopaque foreign body in the soft tissues. Impression:

1. Mildly displaced fracture of the distal tibia as described.
2. Nondisplaced comminuted fracture of the distal fibula as described.

11. According to the Beebe medical records, there was a consultation with defendant Wilson Choy, M.D. on the same date, August 20, 2020, and the Beebe medical records state under a heading DOCTOR NOTES:

Discussed with Dr. Choy and imaging results reviewed by him. Recommends splint, non-wt. bearing on affected side. f/u in the office next week. After additional discussion with Dr. Choy, due to pt.' chronic lower extremity wounds requiring wound center evaluation and dressing changes q 1-2 days, will place in CAM boot instead of orthoglass splint. Noted that pt's spouse and myself with concerns regarding his ambulatory status prior to injury, now with ankle fx/NWB status and pt. with reported chronic difficulties on contralateral side. AM meds ordered, plan to have PT eval. Pt. to determine if safe to go home with resources vs. alternative dispo plan. (Pg.31 Beebe records)

12. Under a heading of RE-EVALUATION NOTES, under the heading of DOCTOR NOTES, it states:

Plan is for physical therapy evaluation pending discharge plan. Patient still with pain and unable to complete physical therapy evaluation. Concern for possible cellulitis, patient started on Ancef. **Unable to tolerate CAM boot secondary to open wounds.** Fiberglass posterior splint placed in order to stabilize joint and avoid contact with open wounds with slight improvement of pain. (Pg. 31 Beebe records) (emphasis added).

13. When the nurses and staff in the Beebe emergency department ("ED") attempted to put on the CAM boot, they twisted and turned plaintiff's left leg it and manipulated it in various directions attempting to get the CAM boot on plaintiff's leg, but by doing so they significantly altered the fractured ankle by their manipulation, twisting and turning. After they did push the

3

CAM boot in place, plaintiff was in intense pain and, after repeated complaints of extreme pain and crying, they finally removed the boot. The Beebe medical records confirm that plaintiff "could not tolerate the CAM boot." But no new Xray was taken in the emergency department after the attempt to put on the CAM boot despite the severe pain it caused plaintiff by the twisting and turning of the fractured left leg.

14. After staff in the emergency department struggled to put on the CAM boot, plaintiff was administered Dilaudid (Hydromorphone), an opiod pain reliever rated by the US Drug Enforcement Agency as "2-8x times more potent than morphine but shorter duration and greater sedation" "and has a rapid onset of action" (Pg. 33 Beebe records) (DEA Hydromorphone Fact Sheet).

15. Beebe ED nursing staff requested plaintiff do physical therapy only four hours after admission which plaintiff declined due to extreme pain in left leg. (Pg. 356 Beebe records).

16. Dr. Choy visited plaintiff for the first time at Midnight on August 20, 2020, and he advised that plaintiff did not require surgery for either the tibia or fibula fracture and that splinting or a CAM walker was all that was required, plaintiff should be non-weight bearing on left leg and "follow-up in two weeks to repeat Xrays of left ankle." (Pg.43 Beebe records signed by Dr. Choy at 11:59 pm August 20, 2020).

17. Apparently, Dr. Choy did not consult with the ED staff regarding their efforts to twist and turn the CAM boot that morning which resulted in the need to administer Dilaudid to plaintiff.

18. At some places in the Beebe records it states that plaintiff was to follow-up for Xrays with Dr. Choy in one week and other places it says two weeks.

19. Plaintiff was administered Oxycodone, another opiod based pain reliever, throughout his hospitalization at Beebe to reduce the severe pain he felt from the left leg injury.

4

20. The Beebe records state that plaintiff was to see Dr. Choy within two weeks or by September 6, 2020. (Pg. 234 Beebe records).

21. At no time prior to plaintiff's discharge from Beebe on August 23, 2020 was any additional Xray taken of plaintiff's leg besides the Xray taken on admission on August 20, 2020.

22. Beebe arranged a placement for plaintiff at Encompass Rehabilitation Hospital in Middletown, Delaware, owned by defendant Encompass Health Rehabilitation Hospital of Middletown, LLC ("Encompass").

23. While at Encompass plaintiff noticed a deformity in the positioning of his left leg as it was oriented to the left, and he pointed this out to staff at Encompass, but no Xray was taken of the left leg at Encompass despite the fact that there was a hospital immediately across the road from the Encompass facility.

24. Encompass had plaintiff engage in various physical and occupational therapy exercises including one where plaintiff was required to pull himself up into a standing position on parallel bars.  This activity required plaintiff to be partially weight bearing on his left leg despite Beebe's orders to the contrary.

25. Page 379 of the Encompass records states,

> Plan the patient is to be nonweightbearing in the left lower extremity continue aggressive physical therapy mobilization DVT prophylaxis. Follow-up with primary orthopedic surgeon.

26. To plaintiff's knowledge, at no time during his hospitalization at Encompass did any staff person, nurse or doctor contact defendant Dr. Choy regarding plaintiff's condition or his perceived leg deformation.

27. Page 392 of Encompass records states that plaintiff is to be nonweight bearing for eight weeks, and this is exactly what Dr. Choy stated orally to plaintiff when they met at Midnight on August 20, 2020.

28. Page 522 of the Encompass records states as of August 26, 2020:

> Per physical therapy, patient had complaints of pain and concern regarding positioning of left ankle and splint. Ace wrap removed, splint noted to be aligned with heel, foot and calf, however foot does appear to be somewhat rotated externally. Ace wrap reapplied and patient concerns/ appearance of leg discussed with Dr. Khandewal.

29. To plaintiff's knowledge Dr. Khandewal did not examine the positioning of plaintiff's left leg nor did he contact Dr. Choy regarding the leg positioning.

30. Page 793 of the Encompass records states, "Educated that pt. had trialed (sic) standing in parallel bars in morning PT session today and was able to lift up buttocks but not yet achieving full standing position." This PT exercise was required even though it required plaintiff to be partially weight bearing on his left leg.

31. Page 801 of the Encompass records states that plaintiff received training in wheelchair operation and, on September 3, 3020, was handed a brochure describing types of ramps and measuring for them, but when plaintiff's wife contacted the ramp constructing company recommended by Encompass, they said they could not do a ramp at our house.

32. Plaintiff was discharged from Encompass on September 7, 2020 and taken by ambulance company to his house in Lewes, Delaware, but since plaintiff and his wife were not able to get a ramp constructed in the three days prior to discharge, three employees of the ambulance company had to carry plaintiff in his wheelchair into the house.

33. As soon as plaintiff and his wife got a local contractor to construct a ramp, plaintiff left their house, using a wheelchair, and went on or about September 15, 2020 to the offices of defendant Dr. Choy in Georgetown, Delaware.

34. Dr. Choy's physician's assistant had an Xray taken of plaintiff's left ankle and advised plaintiff that his left leg was severely deformed and the bones were actually going in three different directions.  After he consulted with Dr. Choy over the telephone, as Dr. Choy was not present for plaintiff's appointment, the physician's assistant now told plaintiff that he required immediate surgery due to the now deformed ankle and leg, but Dr. Choy would not perform the surgery due to plaintiff's known heart conditions.

35. Plaintiff requested that Dr. Choy provide him a copy of his medical records concerning the Xray showing the deformities, but though a request was made for the records in January, 2021 and repeated again and most recently on November 8, 2022, defendant has not provided those office records to plaintiff.

36. Plaintiff then contacted the head of the ankle and foot practice at Rothman Institute, Dr. Steven Raikin, and an appointment was promptly arranged.

37. Plaintiff met with Dr. Raikin on September 23, 2020, and when Dr. Raikin reviewed the Xrays taken at Dr. Choy's office, he was very upset with what he saw, as the Xray showed a major deformity of the left ankle.

38. Dr. Raikin's medical notes of September 23, 2020 state the following:

> Today's visit was a 60-minute plus face-to-face evaluation more than 50% of which discussed the complexity of his current problems combining his medical comorbidities and his unstable trimalleolar ankle fracture with tenting of the skin and a precarious open fracture configuration.  Treatment options at this time include either repeat attempted manipulation and splinting or attempted casting with concerns regarding this becoming an open fracture, inability to maintain alignment, nonunion, deformity, and risk for ulcerative infection. The next alternative would be to go to the operating room and do an open

reduction internal fixation with high risk for wound complications based on his skin quality around the ankle region.  The final option would be to go to the operating room and do a more limited open reduction and definitive stabilization with a multiplane external fixator to hold the ankle in alignment while healing or at least long enough to allow medical optimization and preanesthetic clearance. I discussed these options with the patient and his wife. They have elected to proceed with the external fixation option which I think is the right management. This would depend on medical optimization and preanesthetic clearance. We did contact his cardiologist at Jefferson today Dr. Bravetti who has agreed to accept him into his service. Today.  Prior to this I personally manipulated the fracture into an improved alignment to take the pressure off the medial malleolus and personally applied a well-padded posterior and U-splint to the region.  Patient would like to proceed with the surgery. I discussed the surgical procedure, including but not exclusively related to the patients comorbidities, the post operative rehabilitation, the operative and non operative alternatives and the risks and benefits of these alternative options, as well as the expected prognosis of the above-mentioned procedure with the patient in detail. … [risks] … Additionally, the post operative pain protocol was discussed, with an emphasis on minimizing the use of narcotic medications.  … [patient understanding] …  In my medical opinion, the patient has an orthopedic problem that requires surgical intervention and that is now time sensitive.

39. Plaintiff was immediately taken to Jefferson Hospital in Philadelphia and admitted on September 23, 2022.

40. After procedures and medications to reduce fluid in plaintiff's lungs and to obtain an opinion from Dr. Bravetti on suitability for surgery, Dr. Raikin performed the surgery, manipulating the bones of the ankle into better position and installing the external fixator as discussed.

41. Plaintiff was discharged to home about a week later.

42. Though necessary, the external fixator was very difficult and pain inducing. Plaintiff could not straighten his leg, and the large external rods and clamps made it difficult to lie in bed as it was very difficult to move plaintiff's leg with the external fixator attached.

43. The external fixator caused daily pain while lying in bed. When plaintiff's wife drove him places, he had to lift his leg off the floor of the car if he saw a bump ahead as the impact to a bump was transmitted by the external fixator into the bone causing pain and agony.

44. Plaintiff attended sessions at the Beebe wound management service to treat his leg ulcers caused by chronic venous insufficiency and to treat the left leg after surgery.

45. Plaintiff also had home wound care, physical and occupational therapy, but there was little plaintiff could do in the way of physical therapy while the external fixator was attached.

46. Though Dr. Raikin did not want plaintiff to take narcotic pain relievers, there was constant pain with the external fixator and plaintiff had to do the best he could with over the counter pain relievers.

47. After four months with the external fixator, plaintiff was readmitted to Jefferson Hospital in late January, 2021 to remove the external fixator, and Dr. Raikin did remove it at that time.

48. Plaintiff was then discharged from Jefferson after about a week and was taken directly to Magee Rehabilitation Hospital in Philadelphia for physical and occupational therapy. Plaintiff was still non-weight bearing, and at first he was transferred from the bed to a wheelchair in a mechanical hoist device, but later he was trained in use of transfer boards to get from the bed to a wheelchair.

49. With the extensive and expert physical and occupational therapy at Magee, and after Dr. Raikin permitted him to be weight bearing in March, 2021, plaintiff was able to walk short steps using a walker. Plaintiff continued to gain strength at Magee.

50. Plaintiff was discharged from Magee on or about March 15, 2021, and he then commenced physical and occupational therapy at Elite Rehab in Rehoboth, Delaware. For the first months, plaintiff arrived at Elite in a wheelchair.

9

51. Elite Rehab also did expert physical and occupational therapy. Gradually, they improved his walking ability, his use of a walker and cane, and after about seven months of physical therapy at Elite, plaintiff was able to walk short distances using a cane.

52. Plaintiff still, as of November, 2022, has balance problems and some weakness in the legs, and he must still use a cane for balance and mobilization.

## FIRST CAUSE OF ACTION- MEDICAL NEGLIGENCE
## BEEBE MEDICAL CENTER, INC.

53. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 52 above.

54. Beebe, and its physicians, nurses, physicians' assistants and employees owed plaintiff a duty to diagnose and treat plaintiff according to the appropriate medical standard of care.

55. Though the one and only Xray of plaintiff's left ankle taken by Beebe showed what the radiologist described as a mild fracture of the tibia and fibula, Beebe's employees in its emergency department, undertook to and did manipulate, turn and twist plaintiff's leg in order to make several efforts to install a CAM boot on plaintiff's leg, but in doing so they deformed, injured, and aggravated the fractures causing them to be more severe.

56. As the Beebe emergency department personnel manipulated, turned and twisted the boot on plaintiff's leg, he was caused great and severe pain and discomfort and cried out in pain at the continued twisting and turning of his leg and which extreme pain continued as long as the ED personnel kept the CAM boot in place.

57. Plaintiff's pain was so severe that the Beebe emergency department personnel had to administer several doses of Dilautid (hydromorphone), a powerful pain reliever that is 2 to 8 times more powerful than morphine according to the Drug Enforcement Agency.

58. The actions of the Beebe emergency department personnel aggravated the ankle fractures deemed minor on admission which were now were severe injuries to plaintiff's ankle and more severe than the condition of the leg when the initial and only Xray was taken at 5:30 a.m. after admission to the hospital.

59. Despite the fact that plaintiff was in severe pain and discomfort as a result of the emergency personnel actions, no one at Beebe ordered any additional Xrays of the ankle after the manipulation, turning and twisting of the leg performed by the emergency department personnel.

60. Beebe did not do an additional Xray of plaintiff's leg prior to discharge on August 23, 2020 despite the fact that the emergency department personnel caused additional injury to plaintiff's leg, which injury should have been known to them by plaintiff crying out in pain and requiring hydromorphone to reduce the pain level.

61. Beebe's actions in causing additional injury and not doing a post injury Xray was not in accordance with the standard of care of a medical hospital licensed in Delaware.

62. The failure to do a post-admission Xray also deprived medical staff of Beebe with important information they should have obtained regarding the actual condition of plaintiff's leg at the time of discharge.  The actual condition was only revealed when Dr. Choy's staff did an Xray at his office in September, 2020, which Xray was reviewed by Dr. Raikin on September 23, 2020 showing a major deformity of the leg as he described in his notes and which required emergency attention.

63. Defendant Beebe caused additional injury and magnified the injury to plaintiff's ankle, and caused additional injury by not doing a follow-up Xrays, all of which is below and not in accordance with the standard of care for physicians and hospital facilities in Delaware.

64. As a proximate result of defendant Beebe's aggravating and worsening plaintiff's ankle injury, plaintiff was caused to suffer pain, suffering and discomfort then and for years thereafter, and it has caused plaintiff to incur medical expenses for care and treatment by Dr. Raikin, Rothman Institute, Jefferson Hospital, Magee Rehab Hospital and Elite Rehab.

WHEREFORE, plaintiff prays that judgment be entered in his favor for compensatory damages in an amount in excess of $75,000.

## SECOND CAUSE OF ACTION – MEDICAL NEGLIGENCE
## WILSON C. CHOY, M.D.

65. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 64 above.

66. Defendant Choy reviewed the initial Xray of plaintiff's leg taken at 5:30 a.m. on August 20, 2020, but he failed to order any additional Xrays after the emergency department personnel turned and twisted and manipulated the CAM boot, prescribed by defendant Choy, on plaintiff's leg aggravating and increasing the instability of the fracture of the tibia and fibula as described in Dr. Raikin's notes.

67. Though the emergency department personnel included notes of their efforts to put the CAM boot on plaintiff and the severe pain caused by the CAM boot which they concluded plaintiff could not tolerate, and which notes show the administration of hydromorphone, defendant Choy failed to order any additional Xrays of plaintiff's ankle. Dr. Choy's failure to order additional Xrays in order to properly diagnose and treat plaintiff's ankle was below the standard of care required of licensed physicians in Delaware.

12

68. Defendant Choy's diagnosis and treatment orders for plaintiff were incorrect in light of the aggravation of the ankle injury by the emergency department personnel, of which he was apparently unaware, and the failure to properly examine, test, diagnose and order treatment for plaintiff's ankle was below the standard of care for physicians licensed in Delaware.

69. Though the emergency department notes stated they had to administer multiple doses of hydromorphone to plaintiff after they twisted, turned and manipulated his leg, defendant Choy was negligent in not reviewing those notes or questioning the emergency department personnel about what happened.

70. When defendant Choy saw plaintiff at Midnight he was apparently unaware of the emergency department actions and failed to question them on what occurred.

71. Defendant Choy told plaintiff that he did not require surgery, but he offered no explanations for that conclusion.  In light of plaintiff's actual condition, as revealed in the Xray taken at Dr. Choy's office a month later, and as discussed in Dr. Raikin's notes, Dr. Choy's failure to properly examine and diagnose plaintiff's actual condition and order required medical treatment and surgery, was beneath the standard of care for a licensed physician in Delaware.

72. As a direct and proximate result of defendant Choy's failure to accurately diagnose and treat plaintiff while he was at Beebe, and then sending him for physical therapy at Encompass, without proper required treatment, plaintiff was caused to endure additional pain and suffering by the aggravation of the initial injury, and it caused plaintiff to incur additional medical expenses for care and treatment by Dr. Raikin, Rothman Institute, Jefferson Hospital, Magee Rehab Hospital and Elite Rehab.

73. Defendant Choy told plaintiff at Midnight on August 20, 2020 that he did not require surgery, would have stabilization of the leg by a splint and needed to stay non-weight bearing for

13

only eight weeks, but none of his treatment plan was accurate or in accordance with medical standards in light of the additional injuries that would have been revealed if an Xray were ordered by Dr. Choy and taken at Beebe before discharge.

WHEREFORE, plaintiff prays that judgment be entered in his favor and against defendant Wilson Choy, M.D. for compensatory damages in an amount in excess of $75,000.

### THIRD CAUSE OF ACTION—MEDICAL NEGLIGENCE
### ENCOMPASS HEALTH REHABILITATION HOSPITAL OF MIDDLETOWN, LLC

74. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 73 above.

75. Defendant Encompass received extensive medical records from Beebe on plaintiff's admission regarding his examination and treatment at Beebe.

76. Defendant Encompass knew that plaintiff was to be non-weight bearing on his left leg, but nevertheless they directed him to multiple times attempt to stand up on both legs using parallel bars. This required plaintiff to apply weight to the left leg in order to stand or attempt to stand which was contraindicated by Beebe's orders and notes.

77. Plaintiff also observed on August 26, 2020 to nurse Michael Labaraca that his left leg was improperly positioned, and nurse Labaraca wrote that the "foot does appear to be somewhat rotated externally" and that he would discuss it with Dr. Khandelwal, but Dr. Khandelwal failed to examine plaintiff's leg, he did not write any note that he performed any examination and he did not contact Dr. Choy.

78. Defendant Encompass did not perform an Xray of plaintiff's leg, and they did not take him to the hospital across the street to have an Xray taken.

79. Defendant Encompass is a licensed health care provider in Delaware, but it failed to meet the standard of care applicable to a rehabilitation hospital in that it ordered plaintiff to perform a physical therapy exercise that required him to be weight bearing against orders, Dr. Khandelwal did not follow-up on the report of the rotated positioning of plaintiff's leg, and he did not order an Xray of plaintiff's leg despite the report of nurse Labaraca and he had extensive records on the care and treatment of plaintiff at Beebe where additional injury to the ankle occurred.

80. As a direct and proximate result of the failure of Encompass to meet the required medical standard of care, plaintiff was caused to suffer additional pain and suffering and incur additional medical expenses for care and treatment by Dr. Raikin, Rothman Institute, Jefferson Hospital, Magee Rehab Hospital and Elite Rehab.

WHEREFORE, plaintiff prays that judgment be entered in his favor and against defendant Encompass Health Rehabilitation Hospital of Middletown, LLC for an amount in excess of $75,000.

Respectfully submitted,

Harold R. Berk, Pro Se.
17000 SW Ambrose Way
Port St. Lucie, Florida 34986
215-896-2882
haroldberk@gmail.com

15

